**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ARI TEMAN,**
Plaintiff,

v.

**EDEN QUAINTON,**
**JONATHAN S. GROSS,**
**SARAH SPITALNIK,**
**and QUAINTON LAW,**
Defendants.

Civil Action No. 26-cv-[TO BE ASSIGNED]

**COMPLAINT AND JURY DEMAND**

---

## INTRODUCTION

1. This is an action arising from egregious legal malpractice, breach of fiduciary duty, and related misconduct by Defendants in connection with their representation of Plaintiff in multiple litigations, including GateGuard v. Amazon, GateGuard v. MVI, and GateGuard v. Goldmont.
2. Defendants failed to safeguard Plaintiff's privileged materials, failed to disclose material errors, failed to comply with court obligations, and engaged in conduct that placed Plaintiff's legal rights at substantial risk.
3. Defendants' misconduct occurred through multiple distinct acts and omissions, each of which independently caused harm to Plaintiff and constitutes a separate claim.

---

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.
5. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over related claims.
6. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District, including litigation handled in the Southern District of New York.

---

## PARTIES

1

7. Plaintiff Ari Teman is an individual.
8. Defendant Eden Quainton is an attorney who, at all relevant times, represented Plaintiff, and is the founder of principal of Defendant Quainton Law PLLC. He has an office address  2 Park Ave., 20th Floor New York, NY 10169 and represented Plaintiff in SDNY.
9. Defendant Jonathan Gross is an attorney affiliated with the same firm and involved in Plaintiff's representation.
10. Defendant Sarah Spitalnik is an attorney affiliated with the same firm and involved in Plaintiff's representation.
11. Defendant Quainton Law PLLC is a law firm responsible for the acts and omissions of its attorneys with an address at 2 Park Ave., 20th Floor New York, NY 10169

## FACTUAL ALLEGATIONS

### A. Duties Owed to Plaintiff

12. Defendants owed Plaintiff duties of competence, loyalty, candor, and confidentiality, including the duty to safeguard privileged materials and to disclose material errors.

### B. The Privileged Materials Incident

13. During the course of representation, Defendants caused or permitted the disclosure, or imminent risk of disclosure, of Plaintiff's privileged attorney-client materials to an adverse party, including Amazon.
14. This disclosure was not authorized by Plaintiff.
15. Defendants failed to promptly inform Plaintiff of this incident.
16. Defendants failed to take adequate steps to protect, claw back, or mitigate the disclosure.

### C. Failure to Inform and Missed Deadlines

17. Defendants failed to inform Plaintiff of critical deadlines and obligations relating to document production.
18. But for the intervention of subsequent counsel, Plaintiff's privileged materials would have been produced to an adverse party without his knowledge or consent.
19. These failures occurred while Plaintiff was unable to travel due to medical instructions from his treating physician.

### D. Quainton's Statements and Impaired Representation

2

20. Following the privileged materials incident, Defendant Quainton informed Plaintiff that he was experiencing serious medical issues, including repeated hospitalizations and ongoing evaluation by physicians.

21. During this same period, Quainton exhibited significant lapses in performance, including missed deadlines, failure to track facts, and failure to safeguard privileged materials.

22. Individuals assisting Plaintiff observed Quainton engage in sudden and unprofessional outbursts, including yelling in response to routine inquiries and abruptly terminating communications.

23. These behaviors interfered with effective representation.

24. Despite these issues, Quainton continued representation without adequately protecting Plaintiff's interests.

## E. Knowledge and Conduct of Gross and Spitalnik

25. Upon information and belief, Defendants Gross and Spitalnik were aware of the privileged materials incident and Quainton's impaired ability to perform.

26. They failed to supervise, intervene, or protect Plaintiff's interests.

27. They withdrew from representation in close temporal proximity to these events without ensuring protection of Plaintiff's rights.

## F. Misleading Statements

28. In connection with multiple proceedings, Defendant Quainton made statements concerning Plaintiff that were materially false.

29. These statements were communicated to third parties and caused harm to Plaintiff.

## G. Post-Representation Misconduct – Refusal to Provide Client File

30. Following the termination of Defendants' representation, Plaintiff made repeated requests for his complete client file.

31. Under New York law, a client's file belongs to the client, and an attorney is obligated to promptly turn over the file upon request.

32. This obligation includes all materials necessary for the client to understand and protect his legal rights, including pleadings, correspondence, discovery, and work product, subject only to narrow exceptions not applicable here.

33. Defendant Quainton has failed and refused to provide Plaintiff with his complete client file.

34. Defendants Gross and Spitalnik have likewise failed and refused to provide Plaintiff with his complete client file, despite repeated requests.

35. Defendants' refusal is not justified by any retaining lien, privilege, or other lawful basis.

36. Defendants' conduct violates well-established New York law requiring attorneys to surrender client files upon request.

37. New York courts have long held that a client is entitled to the return of his complete file upon request. See Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP, 91 N.Y.2d 30, 34–35 (1997) (holding that, absent narrow exceptions, "the client is presumptively accorded full access to the entire attorney's file on a represented matter"); see also Matter of Cooperman, 83 N.Y.2d 465, 472 (1994) (recognizing the fiduciary nature of the attorney-client relationship and the client's paramount interest in his file); Tekni-Plex, Inc. v. Meyner & Landis, 89 N.Y.2d 123, 137 (1996) (emphasizing duties of loyalty and confidentiality owed to the client). Federal courts in this District likewise recognize that attorneys must produce client files upon request and may not withhold materials necessary for the client's representation. See, e.g., Mason Tenders Dist. Council Pension Fund v. Messera, 958 F. Supp. 869, 887 (S.D.N.Y. 1997).

38. Defendants' refusal has impaired Plaintiff's ability to protect his legal rights, assess Defendants' misconduct, and mitigate ongoing harm.

## H. Gross's Conflict, Withdrawal, and Adverse Alignment

39. During the course of representation, Defendant Jonathan Gross represented to Plaintiff that he would assist in addressing and remedying the legal issues Plaintiff was facing, including alleged injustices arising from Plaintiff's criminal proceedings.

40. Plaintiff relied on these representations in continuing the Firm Defendants' representation.

41. At or around the same time, Gross became unresponsive to Plaintiff and ceased providing meaningful assistance.

42. Upon information and belief, Gross subsequently accepted or pursued employment with the United States Department of Justice, an entity adverse to Plaintiff's interests.

43. Gross did not disclose to Plaintiff, prior to withdrawal, the full extent of any conflict of interest arising from his transition to a position aligned with an adverse party.

44. Gross withdrew from representation at a critical time, including during the period following the privileged materials incident and during Defendant Quainton's acknowledged medical issues.

45. Gross's withdrawal materially contributed to the destabilization of Plaintiff's representation.

## I. Foreseeable Collapse of Representation

46. At the time of Gross's withdrawal, Defendant Quainton had already informed Plaintiff of serious medical issues affecting his ability to function.

47. Upon information and belief, Gross was aware of these issues.

48. Despite this knowledge, Gross withdrew without ensuring:
    - competent substitute counsel,
    - protection of Plaintiff's privileged materials, or
    - continuity of representation.

4

49. Following Gross's withdrawal, Quainton's conduct became increasingly erratic, including inconsistent statements regarding whether he would continue representation and in what capacity.

50. Quainton's instability following Gross's departure was foreseeable and materially impaired Plaintiff's legal representation.

## J. Undisclosed Employment Negotiations with Adverse Party (Additional Claim Trigger)

51. During the course of his representation of Plaintiff, Defendant Jonathan Gross entered into discussions regarding employment with the United States Department of Justice.

52. Upon information and belief, these discussions occurred while Gross was actively representing Plaintiff in matters in which the Department of Justice was adverse to Plaintiff.

53. Upon information and belief, the Department of Justice extended an offer of employment to Gross, which included compensation and relocation-related benefits in connection with a position in Washington, D.C.

54. Gross did not disclose these employment discussions or the resulting conflict of interest to Plaintiff.

55. Gross continued to represent Plaintiff while pursuing or securing employment with an adverse party.

56. Gross subsequently became unresponsive to Plaintiff and failed to provide meaningful assistance during a critical period.

57. Gross withdrew from representation without ensuring the protection of Plaintiff's interests.

58. Attorneys are prohibited from representing a client while negotiating employment with an adverse party without full disclosure and informed consent. See, e.g., Tekni-Plex, Inc. v. Meyner & Landis.

## K. Ongoing, severe harm and damages

59. Defendants' conduct has materially impaired Plaintiff's ability to prosecute and defend related matters, resulting in the loss or diminution of valuable legal claims and settlement opportunities.

60. Defendants' conduct was willful, reckless, and demonstrated a conscious disregard for Plaintiff's rights, including the concealment of material errors and failure to safeguard privileged communications.

61. The full extent of Plaintiff's damages is not yet known, as Defendants continue to withhold critical materials necessary to assess the scope of harm. However, Plaintiff has already incurred substantial costs and faces additional damages that are expected to reach into the millions of dollars, including legal fees, loss of claims, and diminished litigation outcomes.

62. Plaintiff has already incurred and expects to incur substantial additional legal fees and costs, including expenses that may exceed $2 million, to investigate, remediate, and attempt to restore the damage caused by Defendants.

**CLAIMS FOR RELIEF**

---

## COUNT I – LEGAL MALPRACTICE (QUAINTON)

63. Plaintiff repeats and realleges the foregoing.
64. Quainton breached his duty of care through acts including failure to safeguard privileged materials and failure to disclose material errors.
65. Plaintiff suffered damages as a result.

*See Darby & Darby, P.C. v. VSI Int'l, Inc.*, 95 N.Y.2d 308 (2000).

---

## COUNT II – LEGAL MALPRACTICE (GROSS & SPITALNIK)

66. Gross and Spitalnik breached duties through failure to supervise and failure to protect Plaintiff.

*See Rudolf v. Shayne, Dachs*, 8 N.Y.3d 438 (2007).

---

## COUNT III – BREACH OF FIDUCIARY DUTY

67. Defendants breached fiduciary duties by failing to disclose material facts and protect Plaintiff's interests.

*See Ulico Cas. Co. v. Wilson Elser*, 56 A.D.3d 1 (1st Dep't 2008).

---

## COUNT IV – FRAUDULENT CONCEALMENT

68. Defendants concealed material facts regarding the privileged materials incident and risks to Plaintiff.
69. Defendants fraudulently represented that Defendants were protecting Plaintiff's interests while failing to disclose the privileged materials incident and related risks.
70. Defendants fraudulently represented to the Defendant that they had disclosed all issues and provided full files to new counsel, but they did not, and later refused to do so, and continue to refuse.
71. Defendants fraudulently represented the status of litigation, saying opposing counsel was seeking mediation when it was Quainton who sought it. Quainton repeatedly mislead Teman and others about the status of cases knowing that this would harm Teman's personal interests and ability to secure relief and exit the burden of litigation earlier and with reasonable settlements in the mutual interests of all parties.
72. Plaintiff reasonably relied on these misrepresentations in continuing Defendants' representation and in refraining from taking corrective action.

---

## COUNT V – NEGLIGENCE

6

73. Defendants breached their duty of reasonable care.

---

## COUNT VI – DEFAMATION (QUAINTON)

74. Quainton made false statements of fact concerning Plaintiff to Judges in this district in multiple cases (GateGuard v MVI, GateGuard v Goldmont), "knowingly false and made in disregard of contrary evidence provided to Defendant.

75. Even when provided evidence that Quainton's statements were false, Quainton insisted on repeating them to harm Teman, damage his reputation, and cause harm to Teman, Teman's property, and Teman's company's cases.

76. These statements were made outside the scope of legitimate advocacy and were not necessary to any legal argument.

77. These statements were statements of fact, not opinion, and were reasonably understood as factual assertions.

78. This includes telling the Courts that Teman would be able to travel by land from Israel to the USA during wartime, when provided proof, in written form including emails from cruise operators, travel agents, cargo carriers, and news articles showing that it was in-fact impossible for Teman to travel by land, and that Mr. Teman's life would be endangered were he to attempt to travel through either Egypt or Turkey as the public founder of a number of Jewish and pro-Israel organizations (including the JCorps International Volunteer organization, SoBeShabbat, Calls for Jerusalem, etc.). Furthermore, Teman was legally precluded from doing so by local law, and Quainton knew this.

79. Quainton made these lies to avoid being counsel when Teman discovered that Quainton had leaked his personal privileged communications, including those with other counsel, all without any waiver from Teman.

80. Quainton in-fact had to do *nothing* in GateGuard v MVI to secure a default judgement against MVI, because MVI could not afford corporate counsel and was set to default with a simple letter motion.

81. Quainton and Gross know and had filed papers to the effect that MVI and its officers and associates had conspired to hide exculpatory evidence that would benefit Teman (as was found in discovery) and to secure access to additional evidence and information that would benefit Teman.

82. Instead, Quainton and Gross conspired to harm Teman's interest and prevent Teman from this access.

83. To the extent not protected by privilege, these statements are actionable.

84. *See Dillon v. City of New York*, 261 A.D.2d 34 (1st Dep't 1999).

---

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

85. Defendants' conduct was extreme and outrageous.

86. *See Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993).

---

## COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

87. Defendants' negligence caused emotional harm.

## COUNT IX– AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

88. Gross and Spitalnik knowingly participated in Quainton's breaches.

## COUNT X – CIVIL CONSPIRACY

89. Defendants acted in concert to avoid liability and disclosure of their misconduct.
90. Civil conspiracy is asserted only to connect Defendants to the underlying torts alleged herein, including fraud, breach of fiduciary duty, and malpractice.

## COUNT XI – BREACH OF FIDUCIARY DUTY (FAILURE TO PROVIDE CLIENT FILE)

91. Plaintiff repeats and realleges the foregoing.
92. Defendants had an obligation to promptly provide Plaintiff with his complete client file upon request.
93. Defendants breached this duty by refusing to provide the file.
94. Defendants' refusal to provide Plaintiff's file violates the fiduciary obligations recognized in Sage Realty, which establishes the client's presumptive right to the entire file.
95. Plaintiff has been damaged as a result.

## COUNT XII – LEGAL MALPRACTICE (POST-REPRESENTATION MISCONDUCT)

96. Defendants owed continuing duties to Plaintiff following termination of representation, including the duty to surrender the client file.
97. Defendants' failure to surrender the client file constitutes a deviation from the standard of care recognized under New York law. See *Sage Realty*, 91 N.Y.2d at 34–35.
98. Defendants breached these duties.
99. Plaintiff suffered damages as a result.

## COUNT XIII – CONVERSION (CLIENT FILE AND PROPERTY)

100. Plaintiff has a possessory right to his client file.
101. Defendants have wrongfully retained and exercised control over Plaintiff's property.

102. Courts have recognized that a client's file constitutes property to which the client has a superior possessory right. Defendants' refusal to return the file constitutes wrongful dominion over Plaintiff's property.

103. Defendants' conduct constitutes conversion.

## COUNT XIV – AIDING AND ABETTING (GROSS & SPITALNIK)

104. Gross and Spitalnik knowingly participated in and enabled the continued withholding of Plaintiff's client file.

## COUNT XV – BREACH OF FIDUCIARY DUTY (GROSS – CONFLICT OF INTEREST)

105. Gross owed Plaintiff a duty of loyalty and full disclosure.

106. By failing to disclose conflicts arising from his transition to a position aligned with an adverse party, Gross breached that duty.

107. Plaintiff was damaged as a result.

108. *See* Tekni-Plex, Inc. v. Meyner & Landis.

## COUNT XVI – FRAUD / FRAUDULENT INDUCEMENT (GROSS)

109. Gross made representations to Plaintiff that he would assist in remedying Plaintiff's legal situation.

110. Upon information and belief, these representations were false or misleading when made.

111. Plaintiff relied on these representations.

112. Plaintiff suffered damages as a result.

## COUNT XVII – LEGAL MALPRACTICE (GROSS – WITHDRAWAL)

113. Gross breached the standard of care by withdrawing at a critical time without ensuring protection of Plaintiff's interests.

114. This included failure to account for Quainton's known inability to continue competent representation.

## COUNT XVIII – BREACH OF FIDUCIARY DUTY (GROSS – FAILURE TO ENSURE CONTINUITY)

115. Gross failed to ensure an orderly transition of representation.

116. An attorney may not abandon a client at a critical juncture, particularly where the attorney knows that the client's remaining counsel is unable to provide competent representation.

117. This failure foreseeably resulted in harm to Plaintiff.

## COUNT XIX – BREACH OF FIDUCIARY DUTY (GROSS – UNDISCLOSED CONFLICT)

118.    By engaging in employment discussions with an adverse party while representing Plaintiff, and failing to disclose such conflict, Gross breached his duty of loyalty.

119.    An attorney cannot serve two masters—particularly where one is the client and the other is an adverse sovereign.

## COUNT XX– FRAUDULENT CONCEALMENT (GROSS)

120.    Gross knowingly failed to disclose material facts regarding his employment negotiations and resulting conflict, which Plaintiff had a right to know.

## COUNT XXI– LEGAL MALPRACTICE (GROSS)

121.    Gross's conflicted representation and withdrawal without adequate protection of Plaintiff's interests fell below the standard of care.

## MULTIPLE CLAIMS ALLEGATION

122.    Each of the following constitutes a separate wrongful act and claim.

123.    Each resulted in distinct harm and constitutes a separate claim under applicable insurance policies.

124.    Each such act constitutes a separate "wrongful act" under applicable professional liability insurance policies.

    a.   The privileged materials disclosure incident

    b.   The failure to inform Plaintiff and missed deadlines

    c.   Continued representation despite admitted incapacity

    d.   Failure of supervision and coordinated withdrawal

    e.   Publication of false statements across multiple litigations

    f.   Defendant Quainton's refusal to provide Plaintiff's client file

    g.   Defendant Gross's refusal to provide Plaintiff's client file

    h.   Defendant Spitalnik's refusal to provide Plaintiff's client file

125.    These acts occurred at different times, involved different conduct, and caused distinct harms.

126.    Each constitutes a separate claim under applicable insurance policies.

10

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests:

- Compensatory damages
- Punitive damages
- Costs and fees
- Plaintiff is entitled to immediate injunctive relief compelling Defendants to produce his complete client file.
- Such other relief as the Court deems just and proper

**JURY DEMAND**

Plaintiff demands a trial by jury.

**Respectfully submitted,**

s/Ari Teman/

Ari Teman
Pro Se Plaintiff

11